## FOXWORTH–GALBRAITH LUMBER CO. v. THORP et al.

### No. 4452.

Court of Civil Appeals of Texas. Amarillo.

Sept. 23, 1935.

Rehearing Denied Oct. 21, 1935.

Wilson, Randal & Kilpatrick, of Lubbock, for appellant.

Lockhart & Brown and Vickers, Campbell & Evans, all of Lubbock, for appellees.

HALL, Chief Justice.

July 2, 1929, the Foxworth-Galbraith Lumber Company recovered a judgment against W. B. Thorp for $534.50, together with interest and costs. The suit was based upon a note signed by Thorp. Execution was issued on the judgment October 3, 1929, and returned nulla bona. The judgment remained unsatisfied, and on January 27, 1934, the appellant company sued out a writ of garnishment and had the same served on the First State Bank of Ropesville, Tex., for the purpose of impounding funds alleged to belong to W. B. Thorp in said bank, and sought to subject said funds to the payment of its judgment.

The bank answered in substance that at the time of the service of the writ it had on hand $400 collected by it upon a draft payable to the order of the First National Trust & Savings Bank of San Diego, Cal.; that it received the draft with the vendor's lien note attached, payable to the order of Mabel Mae Thorp, the wife of W. B. Thorp; that the sum of $400 was collected from the maker of the note, and garnishee was holding it for the purpose of remitting in payment of the draft. The bank further answered that it did not know to whom the fund belonged, and tendered the same into court, asking for attorney's fees for filing its answer.

The First National Trust & Savings Bank of San Diego and W. B. Thorp each answered, disclaiming any interest in the $400.

Mrs. Mabel Mae Thorp intervened, claiming the fund.

Foxworth-Galbraith Lumber Company replied to the plea of intervention, alleging that the $400 was in truth and in fact the property of W. B. Thorp, or the community property of said Thorp and wife.

The case was tried to the court, without a jury, and the judge held that the $400 in controversy was the separate property of Mrs. Thorp, and not subject to the writ of garnishment.

It appears from the record that on March 7, 1928, Millie I. Ratcliff and her husband executed a warranty deed, retaining the vendor's lien, conveying "unto the said Mrs. Mabel Mae Thorp, as a part of her own separate property and estate," labor 4 in league 18 of the Wichita county school lands, situated in Hockley county. The habendum clause in said deed is, in part, as follows: "To have and to hold * * * unto the said Mabel Mae Thorp, as her own separate property and estate," etc. This deed was filed and recorded April 2, 1928, about twenty months prior to the date of the judgment upon which this suit is based. January 1, 1930, Mabel Mae Thorp, joined by her husband pro forma, executed to Mrs. Belle Pratt a warranty deed, retaining the vendor's lien, conveying the same property, the consideration expressed in the deed being the assumption by Mrs. Pratt of the indebtedness which Mrs. Thorp assumed when she acquired the property, and in addition thereto the execution by Mrs. Pratt and her husband of two promissory notes, each for the sum of $500, of even date with the deed, maturing on or before May 1, 1930, and January 1, 1931, respectively, said

notes bearing interest from date at the rate of 8 per cent., and secured by a vendor's lien on the property conveyed. They were made payable to Mabel Mae Thorp. On November 23, 1933, Mrs. Thorp deposited with the East San Diego Branch of the First National Trust & Savings Bank of San Diego, Cal., a draft drawn on Mrs. Pratt, through the First State Bank of Ropesville, Tex., for the sum of $400, and attached thereto the vendor's lien note with a release, with instructions to deliver the release when the draft was paid. Mrs. Pratt paid the draft, and both the note and the release were delivered to her.

In reply to Mrs. Thorp's plea of intervention, the appellant lumber company alleged that the conveyance of the land to Mabel Mae Thorp was in fraud of creditors, and that the note upon which the judgment was rendered was given by W. B. Thorp for materials for the erection of improvements upon the land in controversy.

It is recited in the judgment that the court is of the opinion, and finds, that the fund of $400 in controversy is, and was at the time of the making of the affidavit and garnishment and service of the writ in question, the separate property and estate of Mabel Mae Thorp, and that said fund is not the property of W. B. Thorp nor the community estate of W. B. Thorp and wife, Mabel Mae Thorp, and that she is entitled to recover said sum as to all parties to this suit.

The record shows that the note which Thorp executed to the lumber company was given for materials used in building a house, windmill, barn, etc., on the land which had been conveyed to his wife as her separate property. The lumber company reserved no lien to secure the note, and is not claiming a materialman's lien upon the property involved.

This appeal is presented here upon two propositions. By the first proposition it is insisted that appellant is entitled to recover because Thorp and wife caused real property to be conveyed to the wife in consideration of a recited cash payment and her assumption of certain indebtedness then existing against the land, and because thereafter Thorp purchased lumber from the appellant, executing the note upon which he was thereafter sued, and used the lumber in making improvements upon the land. The proposition in the brief further recites that the land was then sold to a third party, who assumed the original debt and executed a vendor's lien note, payable to Mrs. Thorp, for $500, and that the proceeds realized from this note have been impounded by writ of garnishment sued out by appellant. This proposition is not sustained by the record. It assumes that Thorp had to do with the original conveyance of the property to his wife. Thorp and his wife both testified that the property was purchased with funds which she inherited from the estates of her mother and father, who had died several years prior to that time. The fact that her separate property was used in acquiring the land upon which the improvements were made is not denied or questioned by any witness or circumstance appearing in the record.

By its second proposition appellant also assumes that the property upon which the improvements were made was not the separate property of Mrs. Thorp. It is therefore not supported by the record.

It is settled law in Texas that improvements made by one party upon the land of another ordinarily become a part of the real estate upon which the improvements are placed, and that the improvements belong to the owner of the real estate. The rule in such cases is correctly stated in 23 Tex. Jur. 94, § 71 et seq.:

"Improvements upon land or other property ordinarily become a part of the thing improved and belong to the owner thereof. They are not regarded as separate and apart from their applied use, so that the ordinary presumption of community to the extent of such improvements does not obtain. So that, if improvements be made during marriage upon the wife's land and paid for out of the husband's estate or the community, they will nevertheless belong to the wife as owner of the land, being part of the land, subject at most to a reimbursement upon a final accounting. But it is not a rule of law that reimbursement must be made. It is altogether a question of the intention of the parties. The husband may be a mere volunteer in such matter, or the circumstances may be such as to evidence his intention to make a gift. Creditors of the husband would have no right to hold the wife personally liable for the value of the improvements in the absence of a promise on her part to pay. Their remedy, if they have any, is to have such improvements sold for the satisfaction of their demands.

"The true doctrine is the general one that improvements become a part of the

thing improved and their character as property in no wise differs. Of course, where property (whether owned by the husband, the community or the wife) increases in value (whether due to improved conditions of adjacent property, general enhancement in values, accretion to the land, or to growth or development of livestock), such enhanced values do not alter its character; the property remains of the same estate as before the change."

Mrs. Thorp testified, without contradiction, that she did not know that Thorp had executed a note for the purpose of buying lumber and other materials to erect improvements upon her land.

Appellant cites numerous cases to sustain its contention, among them being the case of Dakan v. Dakan (Tex. Sup.) 83 S.W.(2d) 620, 627, reversing Id. (Tex. Civ. App.) 52 S.W.(2d) 1070. According to the facts of that case, Mrs. Dakan sued the children of her deceased husband by a former wife to establish a lien upon a lot which was the community property of Dakan and his first wife, and which Dakan had by will devised to the children of his first marriage. She claimed that her separate funds had been used by Dakan in constructing the improvements, and prayed to have such property sold to satisfy her interest. In disposing of the contention the Supreme Court said: "The cases recognizing the general right of reimbursement between estates will disclose that the right of the estate claiming and entitled to reimbursement is not a fixed right or title in the property sought to be charged, but is an equity."

As stated, there is no proof that Mrs. Thorp acquired the property upon which the improvements were made by her husband without her knowledge, as the result of a fraudulent conveyance, and this action is not an equitable proceeding instituted by appellant for reimbursement, even if such an action could be maintained by the creditor of a fraudulent transferor. As shown by the original petition, appellant is seeking by garnishment to subject to the payment of its judgment against Thorp funds clearly shown to be the proceeds of the sale of her separate property. The fact that $425, which we may admit to be community property, has been used in creating improvements upon her land, does not bring the case within the rule of Dakan v

Dakan or any of the authorities cited by appellant. The note which was sent to the Ropesville, Tex., bank for collection was the separate property of Mrs. Thorp, and, when collected, the proceeds in the hands of the bank was also her separate property, and she is clearly entitled to the proceeds thereof until the appellant has shown that the apparent character of the fund as her separate property is tainted by the fraudulent intent of herself and husband. The trial court correctly held there was no fraud in the transaction. R. S., art. 4622, provides: "Funds on deposit in any bank or banking institution, whether in the name of the husband or wife, shall be presumed to be the separate property of the party in whose name they stand, regardless of who made the deposit, and unless said bank or banking institution is notified to the contrary, it shall be governed accordingly in honoring checks and orders against such account."

According to the plain letter of this statute, it is the duty of the bank to pay the fund to Mrs. Thorp, since the appellant has utterly failed to establish its allegation of fraud between Thorp and his wife in the transaction. We think the court correctly so decided, and the judgment is affirmed.

Affirmed.