Linda Lou MARTIN, Appellant,

v.

Ellen F. MARTIN, Independent Executrix of the Estate of Joe Mack Martin, Deceased, Appellee.

No. 01–87–00872–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Aug. 31, 1988.

Heidi Ann Howell, Houston, for appellant.

Steven P. Lindamood, Smith & Conner, Houston, for appellee.

Before EVANS, C.J., and SAM BASS and COHEN, JJ.

## OPINION

EVANS, Chief Justice.

The appellant, Linda Lou Martin, complains of an order of partition entered by Probate Court No. 2 of Harris County, Texas. The appellee, Ellen Frances Martin, as independent executrix of the estate of Joe Mack Martin, deceased, filed an application for partition and distribution of the decedent's community estate. The appellant filed an answer in the proceedings, contending (1) that the community estate was entitled to reimbursement for expenditures made for the benefit of the appellee's separate property, and (2) that the executrix had characterized certain property as community when it should have been characterized, at least partially, as the decedent's separate property. After a non-jury hearing, the trial court entered the order that is the subject of this appeal.

At the time of their marriage in 1976, Ellen Martin owned a home on five acres in Porter, Texas. Joe Martin owned two lots on McCarty Street in Houston, one of which had a small building on it. After their marriage, Joe and Ellen Martin paid off the mortgage on Ellen's home in Port-

er, added a room to the house, and built a barn and another building on the grounds. They also built a larger building on one of the Joe Martin's lots on McCarty Street, and purchased a third lot on McCarty. In 1983, the Martins sold all three lots on McCarty for a total purchase price of $700,-000. Of that sum, $200,000 was paid in cash, and the purchasers executed a promissory note for the $500,000 balance. The sales transaction did not allocate specific amounts to any of the specific lots. The Martins used the $200,000 cash payment to discharge various outstanding obligations and to pay their living expenses. They deposited the monthly installment payments in their joint bank account, which they used for their living expenses.

Joe Martin died in 1985. In his will, he left one-half of his property to Ellen Martin, one-third of his estate to Linda Lou Martin, a child by a previous marriage, and one-sixth of his estate to Lori Ellen Martin, Ellen Martin's daughter, whom Joe had adopted. Joe Martin's widow, Ellen Martin, was named independent executrix under the will.

During the administration of the estate, the appellant, Linda Martin, sought to remove Ellen Martin as independent executrix, and she also contested the executrix's application for partition and distribution of the community estate. At the hearing on her contest, the court determined that the appellee, Ellen Martin, should reimburse the estate for community funds ($12,000) that had been used to improve Ellen Martin's residence. The court also decreed that certain properties should be characterized as the decedent's separate property. But the court denied the appellant's claim for reimbursement to the community of funds that had been applied to the reduction of a debt on the appellee's residence; it also denied her claim that the $500,000 promissory note, referred to as the Heitman note, should be characterized as the decedent's separate property. The appellant seeks review only of those portions of the order denying her claim for reimbursement and for characterization of the Heitman note as separate property.

In her first point of error, the appellant contends that the probate court erred in denying her claim for reimbursement and asserts that the payments made for the reduction of indebtedness on Ellen Martin's separate property were reimbursable as a matter of law.

An appeal from an order of the probate court is subject to the same standard of review as an appeal in other civil actions. *Drake v. Muse, Currie & Kohen,* 532 S.W.2d 369 (Tex.Civ.App.—Dallas 1975), *writ ref'd n.r.e. per curiam,* 535 S.W.2d 343 (Tex.1976). The burden of proof is on the party claiming reimbursement to establish each element of the claimed right. *See Vallone v. Vallone,* 644 S.W.2d 455, 459 (Tex.1982). Because there are no findings of fact, we must sustain the judgment if there is evidence to support it on any theory of law applicable to the case. *In re W.E.R.,* 669 S.W.2d 716, 717 (Tex.1984).

On cross-examination, the appellee, Ellen Martin, testified that after she and Joe Martin were married, they used community funds to pay off the mortgage on her home in Porter, Texas. She further admitted that no reimbursement was ever "made back" to the community for such payments.

■ When community funds are expended to reduce a debt secured by separate property, the community is entitled to reimbursement. *Hilton v. Hilton,* 678 S.W.2d 645, 648 (Tex.App.—Houston [14th Dist.] 1984, no writ); *Pruske v. Pruske,* 601 S.W.2d 746 (Tex.Civ.App.—Austin 1980, writ dism'd); *Colden v. Alexander,* 141 Tex. 134, 147, 171 S.W.2d 328, 334 (1943). To be entitled to such reimbursement, the claimant need not show that the payments actually enhanced the value or specifically benefited the separate property. *Id.* But interest, taxes, and insurance paid out of community funds for the benefit of separate property do not create an equitable claim for reimbursement unless it is shown that expenditures by the community are greater than benefits received. *Colden,* 171 S.W.2d at 334; *Nelson v. Nelson,* 713 S.W.2d 146, 148 (Tex.App.—Texarkana 1986, no writ).

■ Based on the uncontroverted testimony of the appellee, we conclude that the trial court erred in determining that the community estate was not entitled to reimbursement for the amounts expended by the community to discharge the indebtedness against the appellee's separate property. We therefore sustain the appellee's first point of error.

We do not render a judgment in the appellant's favor, however, as she has requested that we do. The only testimony supporting the appellant's claim for reimbursement is the appellee's statement that community funds were used to reduce the debt against the appellee's separate property. The appellant stated generally that "thirteen, fourteen thousand dollars, somewhere in that range" had been used for such purposes.

Based on this general statement, we cannot say, as a matter of law, that the evidence compels the entry of judgment in the appellant's favor for any particular amount of reimbursement. Because we have found that the trial court erred in denying the appellant's claim for *any* reimbursement, we reverse that portion of the trial court's judgment denying that claim and remand that matter for the court to determine the amount of reimbursement that should be so awarded. *See Barnum v. Lopez,* 471 S.W.2d 567, 568 (Tex.1971).

In her second point of error, the appellant contends that the trial court erred in characterizing the Heitman note as being totally owned by the community estate. Under this point, the appellant argues that because the note was executed as a result of the sale of the three McCarty lots, two of which constituted the separate property of Joe Martin and the third, the property of the community estate, the note should be characterized proportionately as separate property and community property. The appellant contends that she conclusively proved the fair market value of the separate property portion of the note to be 53% of the total value of the note.

The appellee contends that the appellant failed to offer any evidence clearly identify-

ing or segregating that portion of the unpaid balance of the Heitman note that constituted the separate property of Joe Martin. She argues that the trial court did not err in refusing to characterize the Heitman note in the manner requested by the appellant because the appellant failed to carry her burden of clearly identifying and tracing the original separate property in the note.

We agree with the appellee's contention. The evidence shows that the McCarty lots were sold for total purchase price of $700,000, of which $200,000 was paid in cash, and the balance was represented by the $500,000 Heitman note. The cash payment was distributed to various creditors and the balance used by Joe and Ellen Martin for living expenses. The monthly installments were also used jointly by the parties for their living expenses.

■ Property possessed by either spouse during or on dissolution of marriage is presumed to be community property, and a party attempting to show that such property is separate must do so by clear and convincing evidence. Tex.Fam.Code Ann. sec. 5.02 (Vernon Supp.1988). Although the proceeds from the sale of separate property remain separate property, *Bantuelle v. Bantuelle*, 195 S.W.2d 686, 689 (Tex.Civ.App.—Texarkana 1946, no writ), a party asserting separate ownership must clearly trace the original separate property into the particular assets on hand at the dissolution of marriage. *Cockerham v. Cockerham*, 527 S.W.2d 162, 167 (Tex. 1975); *see also Coggin v. Coggin*, 204 S.W. 2d 47 (Tex.Civ.App.—Amarillo 1947, no writ). Unless there is clear and convincing evidence tracing and identifying the resulting property as being separately owned, it will be presumed that the entire mass is community property. *Tarver v. Tarver*, 394 S.W.2d 780, 783 (Tex.1965). Mere proof that a property was separate property does not discharge the burden of tracing where separate and community property have become so commingled that they defy resegregation and identification. *Id.; Bilek v. Tupa*, 549 S.W.2d 217, 220 (Tex.Civ. App.—Corpus Christi 1977, writ ref'd n.r.

e.); *Hudspeth v. Hudspeth*, 198 S.W.2d 768, 771 (Tex.Civ.App.—Amarillo 1946, writ ref'd n.r.e.).

In *Hudspeth*, the wife owned an undivided one-half interest in a hotel at the time of the marriage. After the marriage, the wife and the husband purchased the other one-half interest in the hotel. They later sold the hotel for $3,000 cash and a $5,000 note, which was made payable to the wife, but with no recital that it was her separate property. The court reasoned that because there was no separation of the purchaser's obligation to pay for the community and separate interests in the hotel, the estates had become commingled and had to be treated as community property.

■ In our case, the commingling is far more entangled than in *Hudspeth*. Two of the lots in question were separate property; one was community. Some improvements on the separate property were separate, but most were made with community funds. The lots were sold in a single transaction for a single downpayment and one promissory note. The appellant conceded at trial that there are no records allocating portions of the purchase price among the three lots. The downpayment and all subsequent monthly payments on the promissory note that were received during Joe Martin's lifetime were treated as community funds.

The only evidence regarding the relative worth of the three lots came from the testimony of a real estate appraiser, who gave his opinion of their value as of January 1987. In his opinion, the two lots constituting appellant's separate property had an aggregate value of $395,000, and the community lot and improvements had a value of $350,000. Thus, he reasoned that the value of the separate property represented 53% of the total sales price ($700,000) for all three lots. He stated that the fair market value at time of death in 1985 and at the time of sale in 1983 was not appreciably different from the appraised 1987 value, although he admitted that there had been some change in value.

The appellant argues that this evidence constituted clear and convincing proof of

the proper allocation of the sales proceeds between the separate and community estates. We disagree. The appraiser testified that he had not been asked to determine the respective sales price for each of the three lots, and he admitted that he had no knowledge of the sales price as it related to the individual properties. Thus, there is no evidence showing the allocation of the sales price among the three lots, and as we stated before, the cash downpayment and subsequent monthly note payments were received and treated as community funds. Moreover, the appellant's proof at trial did not exclude the interest accruing on the note during Joe Martin's lifetime, which was community property. *See Lesage v. Gateley*, 287 S.W.2d 193, 196 (Tex.Civ.App. —Waco 1956, writ dism'd).

On the record before us, we cannot say that the trial court was compelled, as a matter of law, to accept the appraiser's opinion as conclusive proof of the proportionate sales price to be allocated to the separate and community estates. We accordingly hold that the trial court did not err in determining that the appellant failed to meet her burden of clearly tracing and identifying the amount of the commingled sales proceeds that represented separate funds. We overrule the appellant's second point of error.

The judgment of the trial court is reversed, insofar as it denies the appellant's claim for reimbursement to the community estate for reduction of the principal indebtedness on the Porter, Texas property, and the cause is remanded to the trial court with instructions to determine the amount of reimbursement to which the community estate is so entitled and to render judgment for the appellant in that amount. In all other respects, the trial court's judgment is affirmed.