In The



Court of Appeals



Ninth District of Texas at Beaumont



 ______________________ 


 

NO. 09-06-023 CV


 ______________________


 

LOUIS DORIS HUVAL, Appellant



V.



BETTY T. HUVAL, Appellee






On Appeal from the 279th District Court


Jefferson County, Texas


Trial Cause No. F-186935






MEMORANDUM OPINION


 Louis Huval appeals the property division in a divorce judgment. He challenges the
trial court's characterization of five accounts as Betty Huval's separate property. (1) Finding
no reversible error, we affirm the trial court's judgment.

 Louis and Betty were married in 1950. During the marriage, Betty inherited six acres
of land in Louisiana. The land was subdivided into eleven lots, and Betty sold the lots during
a twenty-year period. She received $228,467 from the sales. The court awarded Betty five
bank accounts worth approximately $228,447 as separate property reimbursement. 

 Louis brings four issues on appeal. In issue one, Louis argues Betty failed to establish
by clear and convincing evidence that the money in the five accounts was her separate
property. In issues two, three, and four, Louis contends Betty's testimony at trial is
insufficient to rebut the community property presumption, the court erred by not admitting
into evidence the bank records Betty offered as exhibits, and the Huvals' funds were
commingled. Essentially, Louis argues in all four issues that the bank accounts the trial court
awarded to Betty were mischaracterized as her separate property. (2) 

 At the time of the Huvals' divorce, the marital estate included eleven certificates of
deposit, two individual retirement accounts, and two checking accounts. (3) The court
recognized each party's separate property claims by awarding two certificates of deposit and
an annuity plan to Louis as his separate property, and awarding to Betty four certificates of
deposit and an individual retirement account opened in her name. Louis does not challenge
the amount the court awarded him as separate property, or the award of any accounts as a
division of community property. The issue he raises is whether the trial court
mischaracterized community property as Betty's separate property. If the trial court
mischaracterized the property, we must determine whether the mischaracterization was of
such magnitude as to require that we reverse the trial court's judgment and remand for a new
division of the property. See Tate v. Tate, 55 S.W.3d 1, 11 (Tex. App.--El Paso 2000, no
pet.). 

 The Texas Family Code provides that "[p]roperty possessed by either spouse during
or on dissolution of marriage is presumed to be community property." Tex. Fam. Code Ann.
§ 3.003(a) (Vernon 2006). To overcome this presumption, a party must present clear and
convincing evidence that the property is the party's separate property. Id. § 3.003(b). Clear
and convincing evidence is that "measure or degree of proof that will produce in the mind
of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be
established." Tex. Fam. Code Ann. § 101.007 (Vernon 2002). 

 The "party asserting separate ownership must clearly trace the original separate
property into the particular assets on hand at the dissolution of marriage." Martin v. Martin,
759 S.W.2d 463, 466 (Tex. App.--Houston [1st Dist.] 1988, no writ). (4) "Tracing involves
establishing the separate origin of the property through evidence showing the time and means
by which the spouse originally obtained possession of the property." Boyd v. Boyd, 131
S.W.3d 605, 612 (Tex. App.--Fort Worth 2004, no pet.). 

 Betty relies on the community-out-first presumption. If there are sufficient funds in
a joint bank account to cover a party's separate estate after community funds are withdrawn,
the balance may be presumed to be the party's separate funds. See Sibley v. Sibley, 286
S.W.2d 657, 659 (Tex. Civ. App.--Dallas 1955, writ dism'd) (applying the presumption and
awarding the balance as separate property). Furthermore, under another tracing method,
when the value of a deposit of separate property can be identified, and the withdrawals are
identifiable, separate property will remain in the account if the balance never decreases
below the value of the separate property deposit. See generally Snider v. Snider, 613 S.W.2d
8, 11 (Tex. Civ. App.--Dallas 1981, no writ) (awarding husband separate property in savings
account after determining that interest earned, deposits, and withdrawals never reduced
account balance to or below husband's identifiable separate interest). 

 Marital property may be mixed property, consisting of part separate property and part
community property in proportion to the amount of separate and community property. See
generally Gleich v. Bongio, 99 S.W.2d 881, 883 (Tex. 1937) (holding that property
purchased partly with community funds and partly with separate funds has the effect of
creating a tenancy in common between the separate and community estates with each estate
owning an interest in the proportion that it supplied the funds). "A showing that community
and separate funds were deposited in the same account does not divest the separate funds of
their identity and establish the entire amount as community when the separate funds may be
traced and the trial court is able to determine accurately the interest of each party." Welder
v. Welder, 794 S.W.2d 420, 425 (Tex. App.--Corpus Christi 1990, no writ). There is no
commingling by the mixing of dollars when the amount owned by each claimant is known. 
Id. When separate and community funds are commingled in a manner that defies
segregation, the entire commingled fund is presumed to consist of community property. 
Boyd, 131 S.W.3d at 612. 

 It is undisputed that Betty inherited the six acres of land. (5) Betty presented evidence
that she received approximately $228,467 from the sale of the eleven lots, including $13,000
from the first sale. The sale proceeds that remain are her separate property. See Martin, 759
S.W.2d at 466. She spent the money received from the first sale on living expenses and on
the children's schooling. That amount no longer remained in the marital estate when the
marriage was dissolved and, generally, there is no right to reimbursement when separate
funds are spent on normal community living expenses. See In re Marriage of Case, 28
S.W.3d 154, 161 (Tex. App.--Texarkana 2000, no pet). Betty testified, however, that except
for the money received from the first sale, the Huvals used the sales proceeds from the
remaining lots to purchase certificates of deposit, and spent the interest from the certificates
of deposit on living expenses. Betty indicated that by depositing the sales proceeds in the
accounts, she did not intend to make a gift of half her inheritance to Louis, but rather
intended for her children to inherit the money from her. 

 Betty's testimony indicates that her separate property remained in the marital estate
at the time of the divorce. Betty identified the five bank accounts that held her separate
property. She testified regarding three of the accounts held at Bank One as follows: 

 [Louis's Counsel]: Now, there was one piece of property that you sold in 1977;
but most of the property after that was sold between 1985 and 1998; do you
remember that?


 [Betty]: Yes, sir.


 Q: Okay. And all of that money, that's what you used with Mr. Huval to
put into these banks to open these CDs; is that correct?


 A: That is correct . . . .


 Q: Okay. But when you took this money from the sale of your property,
and you put it in these CDs, these CDs were paying you money every
month; weren't they?


 A: Yes, sir.


 Q: That's what you and Mr. Huval and your children were using to live
on?


 A: Yes.


 Q: Okay.


 A: And . . . we'd keep building it up.


 Q: So, most if not all the money that you received from the sale of these
lots is still in these accounts with Bank One?


 A: Yes, sir, it is. 


Betty further indicated that a South Trust bank account also contained her sales proceeds and
a Washington Mutual account was an individual retirement account opened in her name. The
trial court awarded Betty these five bank accounts as her separate property. 

 Louis indicated that the Huvals used the sales proceeds and his personal injury
settlement checks to purchase certificates of deposit. Although Betty testified that the five
accounts contained her sales proceeds, Louis could not identify the source of the funds in any
individual certificate of deposit. He testified the Huvals lived off the interest in the
certificates of deposit and sometimes purchased additional certificates of deposit. Louis
could not identify which certificates of deposit retained accumulated interest and which
certificates of deposit had the interest withdrawn. 

 Linda Dubose, the Huvals' daughter, testified that Betty inherited the Louisiana 
property, and that the property was subdivided into eleven lots. Linda testified that the lots
were sold over a period of time and the sales proceeds were put into certificates of deposit. 
She testified her parents lived off the interest earned on the certificates of deposit, and the
money in the certificates of deposit had accumulated over a twenty-year period. 

 Generally, documents such as bank records are used to corroborate a spouse's
testimony that property is the spouse's separate property. See Osorno v. Osorno, 76 S.W.3d
509, 512 (Tex. App.--Houston [14th Dist.] 2002, no pet.); Purser v. Purser, 604 S.W.2d 411,
413 (Tex. Civ. App.--Texarkana 1980, no writ). Here, the real estate sales documents
corroborated Betty's testimony as to the amount of the sale proceeds she received from
selling the property. She apparently also consulted bank records during her testimony,
although the trial court did not admit the records into evidence. At the conclusion of Betty's
testimony, the following exchange occurred:

 [Louis's counsel]: I can introduce the bank records, Your Honor. They were
merely to refresh her memory; but I can do that.


 [The Court]: Not necessary for me.


 [Louis's counsel]: I've given counsel a copy of those bank records, Your
Honor.


 June 7, 2007[The Court]: Okay.


 [Louis's counsel]: I think the Court had the figures. We testified from it.


Louis did not object to the trial court's statement that offering the referenced bank records
as evidence was "[n]ot necessary for me." See Tex. R. App. P. 33.1(a). The record reflects
Louis had a copy of the records. See Tex. R. Evid. 612. Louis did not offer the records as
evidence. He now complains for the first time on appeal that the court erred "in stating on
the record that it did not need the banking records of Betty." Because Louis did not preserve
any other objection at trial, we understand this argument to be a challenge to the sufficiency
of the evidence, which in a non-jury case may be made for the first time on appeal. See Tex.
R. App. P. 33.1(d). 

 In addition to Betty's testimony and the records referenced, the trial court heard
testimony from the Huvals' daughter. A reasonable conclusion from Betty's testimony,
corroborated by the sales documents before the trial court and Linda Dubose's testimony, is
that the Huvals used Betty's separate property to purchase certificates of deposit, and Betty's
separate property remained in the certificates of deposit when the marriage was dissolved,
with the exception of the proceeds from the first sale. The money did not lose its separate
character by being placed in the certificates of deposit. See generally Newland v. Newland,
529 S.W.2d 105, 107 (Tex. Civ. App.--Fort Worth 1975, writ dism'd) (stating that property
purchased with separate funds becomes the separate property of party whose separate funds
were expended). Louis argues that Betty's testimony was in response to leading questions,
but he objected on that basis to only one question at trial. The judge as trier of fact could
assess the credibility of the witnesses. See Zagorski v. Zagorski, 116 S.W.3d 309, 318 (Tex.
App.--Houston [14th Dist.] 2003, pet. denied). On this record, the trial court could
reasonably form a firm belief or conviction that $215,467 of Betty's separate property
remained when the marriage was dissolved. The trial court awarded Betty approximately
$228,447 as her separate property reimbursement. 

 Under the circumstances of this case, the difference in the $228,447 awarded and the
$215,467 proven to be Betty's separate property is not of such magnitude as to require a
reversal of the trial court's division of the property. In a divorce decree, a trial court "shall
order a division of the estate of the parties in a manner that the court deems just and right,
having due regard for the rights of each party and any children of the marriage." Tex. Fam.
Code Ann. § 7.001 (Vernon 2006). An appellate court reviews a trial court's division of
property for an abuse of discretion. Boyd, 131 S.W.3d at 610 (citing Jacobs v. Jacobs, 687
S.W.2d 731, 733 (Tex. 1985)). A trial court abuses its discretion when it acts without
reference to any guiding rules or principles. Id. In Tate, the court explained that when
considering a claim that community property has been improperly characterized as separate
property, "[i]t is only when the court mistakenly characterizes property that is of such
magnitude that it materially affects the just and right division of the community estate that
reversible error is demonstrated." Tate, 55 S.W.3d at 11. The Tate court found an asserted
characterization error that amounted to 8.5 percent of the estate was not harmful error under
the circumstances. Id. at 10, 12.

 In this case, the trial court awarded Betty a larger portion of the community estate. 
Courts have considered a number of factors that may justify a disproportionate division. Id.
at 10. Some of the relevant factors in the court's division of property are the spouses' ages,
relative physical conditions, the size of separate estates, and any disparity in earning
capacities and incomes. Murff v. Murff, 615 S.W.2d 696, 699 (Tex. 1981). 

 Without the benefit of findings of fact, Louis cannot establish the factors the trial
court considered in determining the division of property. See Tate, 55 S.W.3d at 10. There
are several factors the court may have considered in this case. The Huvals had reached
retirement age at the time of the divorce. Louis suffered from heart problems and asbestosis,
and Betty had suffered from cancer. During much of the marriage, Louis was the only
spouse employed outside of the home. Betty testified as follows concerning the Huvals'
income at the time of divorce:

 [Louis's counsel]: Mrs. Huval, if I told you that according to the temporary
orders, you were given $1114 to live on, would you think that's pretty close?


 [Betty]: Yes, sir, that sounds about right.


 Q: Because you got the $358 [from] your social security check?


 A: And the CDs. Some months there [was] a little less than other[s].


 Q: And you got the three checks from the three CDs at Bank One?


 A: At Bank One, yes, sir.


 Q: And all that every month added up to about [$]1100.


 A: Yes, sir.


 Q: And Mr. Huval got $1749 every month; didn't he?


 A: Yes, sir, he did.


 Q: That's his pension check and his social security?


 A: Uh-huh.


 Q: Is that right?


 A: Yes, sir. 


Louis withdrew at least $75,000 in cash near the time he filed for divorce. Betty testified that
during the separation, she paid the utilities for the lake camp Louis moved to when he left
the house, the utilities for the house, Louis's medical insurance, and quarterly payments of
$1,500 to the IRS for income taxes. 

 The trial court has broad discretion in dividing the property on divorce. Id. at 12. The
trial court did not err in characterizing $215,467 as Betty's separate property. The trial court
awarded Betty five accounts worth $228,447 as her separate property. On this record, the
difference between the amount proven to be Betty's separate property at the time of divorce
and the amount awarded as her separate property is not so substantial as to require the
reversal of the trial court's judgment for a new property division. The record contains
sufficient evidence justifying a disproportionate division of the community property, and in
the absence of findings of fact and conclusions of law, Louis cannot show that the trial court
would divide the total community property differently. Louis has not demonstrated that a
division of the property caused by a characterization error resulted in so substantial a
disparity as to constitute an abuse of discretion, and therefore has not shown error requiring
a reversal of the trial court's judgment. See id. at 10-12.

 We overrule appellant's four issues and affirm the trial court's judgment. 

 AFFIRMED. 


 ____________________________

 DAVID GAULTNEY

 Justice


Submitted on January 25, 2007

Opinion Delivered June 21, 2007 


Before McKeithen, C.J., Gaultney and Horton, JJ.
1. Although the court awarded the accounts to Betty as "reimbursement," Louis does
not attack the court's characterization of the separate property claim in this manner. See
generally Vallone v. Vallone, 644 S.W.2d 455, 458 (Tex. 1982) ("Questions concerning the
right to reimbursement do not concern which estate owns legal or equitable title in certain
property."); Garcia v. Garcia, 170 S.W.3d 644, 650 (Tex. App.--El Paso 2005, no pet.)
("Great latitude must be accorded to the trial court in applying equitable principles to value
such a claim, for it is not just a balancing of the ledgers between competing marital estates."). 
See also Tex. Fam. Code Ann. §§ 3.401-3.410, 7.007 (Vernon 2006) (reimbursement and
economic contribution).
2. Louis argues in part that the land increased in value during the marriage due to the
expenditure of community funds. 
3. The total marital estate was worth approximately one million dollars and included
bank accounts, a house, vehicles, and a lake residence. During the marriage, Louis received
various cash settlements as a result of job-related injuries and asbestosis, and the trial court
awarded certain bank accounts as his separate property. 
4. Under Texas law, property acquired by inheritance is separate property. Tex. Const.
art. XVI, § 15; Tex. Fam Code Ann. § 3.001(2) (Vernon 2006). The law of the situs
controls as to the land. Kaherl v. Kaherl, 357 S.W.2d 622, 624 (Tex. Civ. App.--Dallas
1962, no writ). Louisiana law also provides that property acquired by inheritance is separate
property. La. Civ. Code Ann. art. 2341 (2007). The proceeds from the sale of the eleven lots
were Betty's separate property. See Martin, 759 S.W.2d at 466 (stating that the proceeds
from the sale of separate property remain separate property).
5. Under Texas law, improvements made to real property are given the same character
as the real property in the division of the marital estate. See In re Marriage of Morris, 12
S.W.3d 877, 881-82 (Tex. App.--Texarkana 2000, no pet.). This is true because generally
improvements made on the property become part of the real estate and are considered the
property of the real estate owner. See id.; Foxworth-Galbraith Lumber Co. v. Thorp, 86
S.W.2d 644, 644-66 (Tex. Civ. App.--Amarillo 1935, no writ). Louis has not shown that
Louisiana law treats improvements to realty differently. A marital estate may have a right
to reimbursement or economic contribution. See Tex. Fam. Code Ann. § 3.403(a),(b);
Dakan v. Dakan, 125 Tex. 305, 83 S.W.2d 620, 628 (1935). The party asserting claims for
reimbursement or economic contribution must plead and prove the claims. See Garza v.
Garza, 217 S.W.3d 538, 546 (Tex. App.--San Antonio 2006, no pet.) (reimbursement);
Raymond v. Raymond, 190 S.W.3d 77, 83 (Tex. App.--Houston [1st Dist.] 2005, no pet.)
(party did not plead economic contribution). Although neither party filed a pleading
requesting reimbursement or economic contribution with the trial court, Louis provided
testimony that the community expended funds to improve Betty's separate property. As the
trier of fact, the trial judge may have rejected his testimony as not credible. It is also possible
the trial court recognized this reimbursement claim in the amount awarded as separate
property to Louis, because the record does not include separate findings of fact and
conclusions of law.