

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-08-00066-CV
_____

IN THE MATTER OF THE MARRIAGE
OF SAMUEL DWAIN BORN AND
DONNA SUE BAILEY BORN

On Appeal from the County Court at Law
Panola County, Texas
Trial Court No. 2007-185

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Chief Justice Morriss

MEMORANDUM OPINION

Samuel Dwain Born (Sam) and Donna Sue Bailey Born were divorced[1] after a marriage of a little over six years.[2] During the bench trial regarding the divorce, three disputed accounts took much of the focus. Sam had brought into the marriage the funds that had been in each of these three accounts at the time of the marriage, yet income earned on each account during the marriage was reinvested into the account and commingled with the funds then on hand. Sam attempted to trace his pre-marriage separate property into the funds on hand in each of the disputed accounts at the time of the divorce. In the effort, Sam provided oral testimony as to each of the accounts—testimony that could have been disbelieved by the trial court—and tendered as exhibits only some, not all, of the account records on each account. Some of those records projected values or balances at a future date, "assuming no other activity." In the end, none of the three accounts enjoyed a full accounting of all transactions occurring or all income accruing during the marriage.

Two other facts are relevant to issues urged on appeal. Sam admitted to not having filed federal income tax returns on his income during the marriage (Donna did, on her income). Sam also wanted the trial court to find Donna in contempt for certain post-estrangement actions he alleged she had taken.

---

[1]The trial court heard evidence and orally granted the divorce July 20, 2007, but did not sign the final decree until March 14, 2008. A nunc pro tunc decree was signed April 3, 2008.

[2]The marriage occurred April 7, 2001, and the divorce was effective July 20, 2007.

Contrary to Sam's desires, the trial court classified as community property each of the three disputed accounts, dividing one of them equally and the other two, sixty-five percent to Sam and thirty-five percent to Donna. Also to Sam's disappointment, the trial court ruled that Sam was responsible for his own income tax liabilities and failed to find Donna in contempt of court. Sam appeals.

We affirm, finding that (1) classifying the three accounts as community property and dividing them as was done was not error, (2) assigning to Sam his own tax liabilities was not error, and (3) failing to find Donna in contempt was not error.

*(1)     Classifying the Three Accounts as Community Property and Dividing Them as Was Done Was Not Error*

In multiple points of error, Sam complains of the trial court's finding that two mutual fund accounts and a bank certificate of deposit were community property and also complains of the trial court's division of those assets. Because these points of error involve a common analysis, we discuss them together.

Before Donna and Sam married, Sam owned two mutual fund accounts (the "First Command Accounts"): one, a Roth IRA identified with the last few digits of its account number as 5556-6 or 5556 (the "Roth IRA"), and the other First Command account identified with the last few digits of its account number as 8653-7 or 8653 ("Account 8653"). The third disputed account is a certificate of deposit ("CD") issued by Panola National Bank ("CD 7124"). At trial, Sam offered certain documentary evidence about the three accounts, which confirmed that he had owned them before

3

marriage but which did not detail all possible transactions or all income earned on, and reinvested in, the accounts during the marriage.

The trial court, after classifying all three disputed accounts as community property, split the CD equally between Sam and Donna and awarded sixty-five percent of the First Command Accounts to Sam, leaving thirty-five percent for Donna.

Donna supports the trial court's action by arguing that, because Sam could not identify all of the community property interests in the three accounts because he did not provide statements from each year of the marriage, the community interests, i.e., the reinvested dividends, fatally commingled with the separate property interests, rendering the three accounts community property. We agree with the trial court and with Donna.

Any property on hand in a marriage is presumed to be community property. TEX. FAM. CODE ANN. § 3.003(a) (Vernon 2006). To rebut this presumption, the person seeking to prove the separate character of the property must do so by clear and convincing evidence. TEX. FAM. CODE ANN. § 3.003(b) (Vernon 2006).

"Clear and convincing" evidence means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002); *Mock v. Mock*, 216 S.W.3d 370, 372 (Tex. App.—Eastland 2006, no pet.).

4

A party seeking to rebut the community presumption must trace the assets on hand during the marriage back to property that is separate in character. *Cockerham v. Cockerham*, 527 S.W.2d 162, 167 (Tex. 1975); *Boyd v. Boyd*, 131 S.W.3d 605, 612 (Tex. App.—Fort Worth 2004, no pet.). Tracing involves establishing the separate origin of the property through evidence showing the time and means by which the spouse originally obtained possession of the property. *Boyd*, 131 S.W.3d at 612. The burden of tracing is a difficult, but not impossible, burden to sustain. *Latham v. Allison*, 560 S.W.2d 481, 484 (Tex. Civ. App.—Fort Worth 1977, writ ref'd n.r.e.). We are to resolve any doubt as to the character of property in favor of the community estate. *Akin v. Akin*, 649 S.W.2d 700, 703 (Tex. App.—Fort Worth 1983, writ ref'd n.r.e.); *Contreras v. Contreras*, 590 S.W.2d 218, 221 (Tex. App.—Tyler 1979, no writ).

"When . . . cash dividends are passed on to married owners of mutual fund shares who hold them as separate property, there is no question that these dividends become community property of the spouses." *Bakken v. Bakken*, 503 S.W.2d 315, 317 (Tex. Civ. App.—Dallas 1973, no writ). The mere proof that property was separate property when purchased does not discharge this burden where community property has become so commingled with the original separate property as to defy resegregation and identification. *Tarver v. Tarver*, 394 S.W.2d 780, 783 (Tex. 1965); *Martin v. Martin*, 759 S.W.2d 463, 466 (Tex. App.—Houston [1st Dist.] 1988, no writ). If separate property and community property have been so commingled as to defy resegregation and identification, the statutory presumption of community property prevails; when separate property has not been

5

commingled or its identity as such can be traced, the statutory presumption is dispelled. *In re Estate of Hanau*, 730 S.W.2d 663, 667 (Tex. 1987); *Tarver*, 394 S.W.2d at 783.

Courts have no difficulty in following separate funds through bank accounts. *Sibley v. Sibley*, 286 S.W.2d 657, 659 (Tex. Civ. App.—Dallas 1955, writ dism'd). A showing of community and separate funds existing in the same account does not divest the separate funds of their identity and establish the entire amount as community, if the separate funds may be traced and the trial court is able to determine accurately the interest of each party. *Holloway v. Holloway*, 671 S.W.2d 51, 60 (Tex. App.—Dallas 1983, writ dism'd).

Here, of course, the trial court found that each account was community property, in other words, that Sam failed to trace, by clear and convincing evidence, his separate property into the balances in the accounts at the time of divorce.

Sam and Donna both suggest in their briefing to this Court that, in reviewing the trial court's division of properties, we should determine whether the trial court abused its discretion.[3] In dividing assets, a trial court abuses its discretion if it acts "without reference to any guiding rules or principles" or is "arbitrary or unreasonable." *Boyd*, 131 S.W.3d at 611; *see Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985); *McClary v. Thompson*, 65 S.W.3d 829, 833 (Tex. App.—Fort Worth 2002, pet. denied). We should indulge every reasonable presumption in

---

[3]We are not certain that abuse of discretion is the correct standard of review. *See In re J.F.C.*, 96 S.W.3d 256 (Tex. 2002); *C.H.*, 89 S.W.3d 17; *Boyd*, 131 S.W.3d at 611; *Tate v. Tate*, 55 S.W.3d 1, 5 (Tex. App.—El Paso 2000, no pet.). But, for the purposes of this appeal, we will apply the standard argued by both parties.

favor of a proper exercise of discretion. *Boyd*, 605 S.W.2d at 611; *Pletcher v. Goetz*, 9 S.W.3d 442, 446 (Tex. App.—Fort Worth 1999, pet. denied) (op. on reh'g). We will reverse only if the trial court clearly abused its discretion and the error materially impaired a just and right division. *Jacobs v. Jacobs*, 687 S.W.2d 731, 732–33 (Tex. 1985); *Boyd*, 605 S.W.2d at 611.

All three accounts began as Sam's separate property, via the inception-of-title rule. *See* TEX. FAM. CODE ANN. § 3.001(1) (Vernon 2006); *Barnett v. Barnett*, 67 S.W.3d 107, 111 (Tex. 2001). But, these assets all generated income that was reinvested into the respective accounts. What was to be divided, therefore, was the balance on hand in each of these three accounts at the time of the divorce; and those balances included, at least, principal and reinvested income paid during the marriage.

Income earned during marriage is community property. *Bakken*, 503 S.W.2d at 317. Because community property income had been commingled with the originally separate principal, Sam was obligated to trace, by clear and convincing evidence, each account and its holdings from the date of divorce back to the date of the marriage. *See Cockerham*, 527 S.W.2d at 167.

a.      *The Roth IRA*

To try to trace separate property in the Roth IRA, the largest of the three accounts, Sam produced year-end statements for 2000, 2002, 2003, 2005, and 2006. The statement for 2000 establishes that, a little over three months before the marriage, the account was in Sam's name and

7

had a balance of 3,622.713 shares having a total value of $44,088.42. The account statements show four entries during the marriage reflecting the reinvestment into the account of "income":

| | |
|---|---|
| 2002 | $255.95 |
| 2003 | $228.45 |
| 2005 | $373.86 |
| 2006 | $427.62 |

These statements also show two entries during the marriage where "capital gains" distributions[4] were reinvested:

| | |
|---|---|
| 2005 | $580.19 |
| 2006 | $1,158.94 |

Sam testified that the amount of dividend reinvestment for 2007 would not be known until the year-end statement.

What cannot be determined from the documentary evidence submitted as to the Roth IRA is what transactions,[5] if any, occurred between December 31, 2000, and April 7, 2001 (the date of the marriage); between April 7, 2001, and December 31, 2001; between December 31, 2003, and

---

[4]While not material to our analysis, precedent suggests that capital gain distributions from separate property retain their separate nature, unless commingled. *See Bakken*, 503 S.W.2d at 317.

[5]We can see, from Petitioner's Exhibit 4 that, on July 2, 2002, 688.348 shares were transferred out of this account to another. There would be nothing to stop such transfers in or out during the undocumented gaps in the account.

December 31, 2004; or between December 31, 2006, and July 20, 2007 (the date of the divorce). In those documentary gaps, various deposits, withdrawals, or both could have occurred.

b. *Account 8653*

For Account 8653, Sam produced a statement dated January 19, 2001, which showed 1,009.76 shares owned; this statement does not show price per share. A statement dated March 12, 2001, shows 279.833 shares owned, at $10.96 per share. Sam also produced statements showing the following "income" reinvestments:

2002           $8.67

2003           $5.84

2006           $23.58

Also shown by the documentation were the following reinvestments from "capital gain" distributions:

2006           $116.41 (a "short term capital gain distribution" reinvestment)

2006           $107.68 (a "capital gain distribution" reinvestment)

What cannot be determined from the documentary evidence submitted as to Account 8653 is what deposits or withdrawals, if any, occurred between March 12, 2001, and April 7, 2001 (the date of the marriage); between April 7, 2001, and December 31, 2001; between December 12, 2003, and December 31, 2005; or between December 31, 2006, and July 20, 2007 (the date of the divorce).

9

*c.*     *CD 7124*

As to CD 7124, Sam produced statements covering the beginning of the marriage and near the date of the divorce, but left an approximately four-and-one-half year gap between those statements. Sam testified, and the documentary evidence supports his claim, that he bought CD 7124 in 1999, well before the marriage, for $8,000.00. He did not, however, know the value of the CD on the date of the marriage, April 7, 2001. He also did not know how much interest had been earned on the CD in 2001, 2002, 2003, 2004, 2005, or 2006.

The documentary evidence on the CD shows that the balance decreased, a decrease that could be consistent with Sam's claimed withdrawal of $2,500.00. But the undocumented gap as to this CD is large, approximately four and one-half years out of the some six-year marriage.

The documentation states that there were no deposits (other than interest) since the CD was originally purchased in 1999. Therefore, the evidence demonstrates that the only property placed into the account, beyond the original separate-property principal, was the interest earned on the account. But we cannot know how much interest there was. Had the documentation also stated that there had been no withdrawals, we could easily allocate between separate-property principal and community-property interest. But the documentation does not say that there were no withdrawals and does not state what the interest rate was during the gap in documentation. While common sense suggests that the interest rate on a two-year, bank CD did not likely go much higher than the 4.4 percent or 5.8 percent shown by the documentation in evidence, there is no proof of what that

interest rate was during the gaps. Thus, it is impossible to accurately trace the separate property portion of the CD balance as of the date of the divorce.

An older Texas Supreme Court case is instructive. In that case, the trial court had ruled that two savings certificates were community property. The Texas Supreme Court reversed as to one certificate, which it found had been clearly traced to separate property, and affirmed as to the other, which it found had not been so traced. The traced certificate had clearly been bought with the money withdrawn from the husband's separate-property account, and all deposits in that case were clearly marked "dividends" and were all accounted for. *McKinley v. McKinley*, 496 S.W.2d 540 (Tex. 1973). The second *McKinley* certificate, though, was much more difficult, if not impossible, to trace, due to gaps in the documentation. Thus, the high court ruled that it had been correctly deemed community property. *Id*. at 542.

Generally, conclusory or uncorroborated testimony that funds are separate property is insufficient to rebut the community presumption, unless there is also evidence that traces the funds. *Mock*, 216 S.W.3d at 373. *Compare Boyd*, 131 S.W.3d at 612 (husband failed to present specific tracing testimony or corroborating testimony or evidence of nature of real and personal property); *Ganesan v. Vallabhaneni*, 96 S.W.3d 345, 354 (Tex. App.—Austin 2002, pet. denied) (husband's testimony failed to establish certain accounts were separate property because his testimony and exhibits failed to "provide account numbers, statements of accounts, dates of transfers, amounts transferred in or out, sources of funds or any semblance of asset tracing"); *Osorno v. Osorno*, 76

S.W.3d 509, 512 (Tex. App.—Houston [14th Dist.] 2002, no pet.) (husband's testimony insufficient to overcome community presumption in absence of deposit slips or bank records tracing source of funds); *Bahr v. Kohr*, 980 S.W.2d 723, 728–29 (Tex. App.—San Antonio 1998, no pet.) (wife's testimony failed to establish property was her separate property because documentary evidence offered to support claim property was purchased with monies from separate-property account did not show date account was opened, running balance of account, or identify party receiving wire transfer for alleged purchase of property at issue); *Robles v. Robles*, 965 S.W.2d 605, 616 (Tex. App.—Houston [1st Dist.] 1998, pet. denied) (husband's testimony insufficient to overcome community presumption when husband testified only as to separate nature of property in dispute, but provided no supporting documentary evidence to trace funds used to purchase property); *with Faram v. Gervitz-Faram*, 895 S.W.2d 839, 843 (Tex. App.—Fort Worth 1995, no writ) (wife did establish that two investment accounts and Treasury bill were her separate property through documents "tracing the source of funds used to purchase the Treasury bill back to a USAA savings account designated in the couple's pre-marital property agreement as Gervitz' separate property" and tracing those accounts to before marriage); *Newland v. Newland*, 529 S.W.2d 105, 107–09 (Tex. Civ. App.—Fort Worth 1975, writ dism'd) (husband did establish that funds in account were his separate property because, for most of the twenty-year period involved, the husband's "testimony was corroborated by bank records" and "documentary evidence").

12

In a quite recent case, the husband offered testimony and documentary evidence to trace CDs owned during the marriage from his separate property funds. The appellate court determined the CDs were both separate and community property:

> [W]e conclude that the CDs . . . contained both separate funds (the amounts that Mike had on deposit prior to his marriage to Cindy) and community funds (the amount of interest earned by the accounts during Mike's and Cindy's marriage). The pre-marriage bank statements established the beginning values of the CD's that were Mike's separate property. By characterizing the entire accounts as community, when the separate property amounts were in evidence, the trial court mischaracterized a significant portion of the CDs as community property. Therefore, we find the court erred in characterizing the CDs, in their entirety, as community property.

*Perez v. Perez*, No. 09-06-521CV, 2008 Tex. App. LEXIS 3668, at *7–8 (Tex. App.—Beaumont May 22, 2008, pet. denied).

In *Zagorski v. Zagorski*, 116 S.W.3d 309 (Tex. App.—Houston [14th Dist.] 2003, pet. denied), the trial court found that the husband adequately traced more than two million dollars of pre-marriage separate-property money which had been used during the marriage for expensive toys and gifts for he and his wife, community living expenses, and investments and business deals. *Id.* at 315–16, n.3. The wife complained he had not met the clear and convincing standard:

> The essence of her complaint is credibility. Specifically, she complains Tony's inception of title evidence isn't believable due to incomplete documentation, inconsistent documents and biased testimony. As evidence the Account was separate, Tony submitted oral testimony and circumstantial documentary evidence. His evidence traced the origin of funds in the Account to the repayment of savings prior to their marriage.

13

*Id.* at 316.  The court held that, although the husband did not introduce more specific proof such as wire transfers or trust or loan agreements, the trial court was the sole evaluator of credibility:

> The judge obviously resolved the disputed evidence in favor of his findings.  In light of our review of the entire record, we hold whether the trial judge could reasonably conclude that the fact that Tony had accumulated personal savings of at least $2,057,524.20 prior to the date of the parties' marriage was highly probable; therefore, the evidence is factually sufficient.  Because the trial court's conclusion of law number 5 is correctly drawn from finding number 7, we hold conclusion 5 to be correct as a matter of law.

*Id.* at 318.

The wife went on to claim community property funds were hopelessly commingled with the husband's separate-property interests.   The appellate court likewise rejected this argument:

> the record does contain ample, clear evidence to permit segregation of the separate and community funds in the Account and shows that any community funds were depleted by community expenses.  Tony introduced an exhibit showing less than $115,000 in interest was earned during the marriage.   Another exhibit shows approximately $366,000 was withdrawn for marital living expenses.  Lori cites no evidence rebutting the community-out-first presumption.

*Id.* at 320.

Here, the trial court was left to speculate, based on Sam's testimony and spotty records, what part of the three accounts was the original separate-property principal and what part was community. *See Latham*, 560 S.W.2d at 485 (conjecture concerning source of funds is insufficient to trace); *see also McKinley*, 496 S.W.2d at 544 (community presumption prevails if speculation is required to assess character of property).

14

As to all three accounts, there is incomplete documentary, and less-than-compelling oral, evidence tracing the account from its presumed status as community property, during the marriage, to Sam's separate property, before the marriage. Sam failed to accurately segregate the separate and community property interests.

A party asserting separate ownership must, by clear and convincing evidence, trace the original separate property into the particular assets on hand at the dissolution of marriage. *Cockerham*, 527 S.W.2d at 167. In each case, Sam failed to convince the trial court that he had adequately traced his separate property. Plenty of authority exists to support the trial court's finding. In light of the cases cited above, the record evidence does not compel a holding that the trial court abused its discretion in characterizing the accounts.

Once we have moved past the characterization of property as community or separate, we review the trial court's division of marital property under an abuse of discretion standard. *Murff v. Murff*, 615 S.W.2d 696, 698–99 (Tex. 1981); *Stavinoha v. Stavinoha*, 126 S.W.3d 604, 607–08 (Tex. App.—Houston [14th Dist.] 2004, no pet.). We may reverse the trial court's division of marital property only if, after reviewing the record, it is clear that the trial court's decision is an abuse of discretion or is manifestly unjust and unfair. *Stavinoha*, 126 S.W.3d at 607–08; *see also Sutton v. Eddy*, 828 S.W.2d 56, 58 (Tex. App.—San Antonio 1991, no writ) (record must affirmatively show that trial court's decision is arbitrary and unreasonable).

15

Sam complains of the division, but he received half of one and almost two-thirds of the other two contested accounts. We find no abuse of discretion.

*(2)     Assigning the Tax Liabilities to Sam Was Not Error*

Sam complains that the trial court ordered each party to pay taxes on income earned by that party.[6] Sam admitted at trial that he habitually did not file income tax returns; this was his practice before and during his marriage to Donna.[7] Sam estimated he owed about $33,504.00 in cumulative back income taxes for the years 2003, 2004, 2005, and 2006. Throughout the marriage, Donna filed her own tax returns, and presumably paid the taxes, on her income. She encouraged Sam to file his tax returns, but he did not.

A trial court exercises wide discretion in making an appropriate division of the community assets and liabilities on divorce, and its division should not be disturbed on appeal unless an abuse of discretion is shown. *Murff*, 615 S.W.2d at 698; *Robles*, 965 S.W.2d at 621. Although a tax liability is not technically a "debt," a trial court may, in a divorce case, take the parties' tax liability

---

[6]The trial court made a letter ruling that said each party was "responsible for the tax liability on their respective income." The decree, though, says "all tax liability that was incurred during the marriage years of 2001, 2002, 2003, 2004, 2005 and 2006, shall be paid by SAMUEL DWAIN BORN and SAMUEL DWAIN BORN shall hold DONNA SUE BAILEY BORN and her property harmless from any tax liability therefrom." We see no evidence of any tax liability beyond that which would be owed on Sam's income, on which he did not pay. Therefore, what some may see as a possibly over-broad decree by the trial court may prove to be accurate.

[7]Sam said he "quit initially filing [income tax returns] in '97." He filed his 1997 taxes in 2000; his 1998 in 2001, and his 1999 and 2000 taxes in 2002. Donna testified Sam only filed past due tax returns when the Internal Revenue Service contacted Sam and began to garnish the couple's wages.

16

into consideration in its division of the marital estate, and may even require one party to assume the other's tax liability. *Mullins v. Mullins*, 785 S.W.2d 5, 7–8 (Tex. App.—Fort Worth 1990, no writ); *Able v. Able*, 725 S.W.2d 778, 780 (Tex. App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.). In making its "just and right" division of the marital estate, the trial court may consider many factors, including the parties' relative earning capacity, the size of their separate estates, and the nature of the community property being divided. *Murff*, 615 S.W.2d at 699. It is reversible error for a court to refuse to consider tax liability, particularly when it is substantial and one of the spouses is without means to pay the obligation. *Baccus v. Baccus*, 808 S.W.2d 694, 700 (Tex. App.—Beaumont 1991, no pet.).

Sam's only argument that the trial court abused its discretion in its ruling on the tax liability is that Donna clearly benefitted from Sam's income, or that some income was necessarily transferred from Sam to Donna, *see* IRC Title 26, § 66; therefore she has liability for that income as much as he does. Nonetheless, it still is a function of the trial court's discretion. There was evidence Sam has substantial earning capacity, in excess of $100,000.00 a year; Donna is an L.V.N., whose 2004 adjusted gross income was $32,240.00. Also, there was substantial evidence Sam made a conscious decision not to pay his taxes, going back before the marriage. On this record, we refuse to find that the trial court abused its discretion in its apportionment of tax liability.

17

*(3)* *Failing to Find Donna in Contempt Was Not Error*

Sam unsuccessfully sought to have the trial court find Donna in contempt of court. Sam claimed Donna had unplugged his freezer (causing food to spoil), disconnected the telephone service at the couple's house, and taken video games without permission. We find no reason to find, or require a finding of, contempt of court.

Though Sam claimed Donna had the telephone at the couple's house disconnected, she said she had done it with Sam's permission. She explained that she had had that telephone service since 1999 and wanted to keep it to maintain her credit rating. Sam claimed Donna had unplugged a freezer, which he estimated was about a third full, causing a "couple, three, four hundred dollars" worth of food to spoil. Donna denied unplugging the freezer. Donna also denied Sam's allegation she had taken many video games.

Sam offers no authority for his assertion the trial court erred by not holding Donna in contempt.[8] The evidence conflicted on Sam's allegations. Because contempt power is necessary and integral to judicial authority, judges have wide discretion in whether to find contempt. *In re Bell*, 894 S.W.2d 119, 127 (Tex. Spec. Ct. Rev. 1995) ("Although the exercise of this authority should be tempered with common sense and sound discretion, nevertheless we accord the judge's contempt

_____

[8]We question whether we even have jurisdiction to address this point. An order finding a party not in contempt is not a final, appealable judgment, so an appellate court lacks jurisdiction over the matter. *Norman v. Norman*, 692 S.W.2d 655 (Tex. 1985); *Wagner v. Warnasch*, 156 Tex. 334, 295 S.W.2d 890 (1956). In this record, we find no order regarding contempt. While the matter was addressed briefly during the trial, Sam did not pursue it to the point of obtaining a specific ruling.

18

power wide latitude because it is essential to judicial independence and authority.") (citations omitted) (proceeding affirming State Commission on Judicial Conduct sanctions).

Based on the record before us, we find no abuse of discretion on the part of the trial court. We overrule this point of error.

We affirm the judgment of the trial court.


_____ Josh R. Morriss, III
Chief Justice

Date Submitted:    February 4, 2009
Date Decided:      April 16, 2009