# NO. 12-22-00286-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *IN THE MATTER OF THE MARRIAGE OF ANDREA SHAWN HARRIS MOORE AND DAVID ALAN MOORE* | § | *APPEAL FROM THE COUNTY* |
| | § | *COURT AT LAW NO 2* |
| | § | *SMITH COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Appellant, David Alan Moore, appeals the trial court's order granting his divorce from Appellee, Andrea Shawn Harris Moore. In four issues, he contends that the trial court erred in its classification of community and separate property and in unequally dividing the community estate between the parties. We affirm.

### BACKGROUND

David and Andrea married on February 15, 2015. On February 16, 2021, Andrea filed her Original Petition for Divorce on the ground of insupportability, followed by her First Amended Petition for Divorce on July 2. In the Amended Petition, Andrea requested confirmation that certain assets, including her 100% ownership share in Shawna, Inc., were her separate property. Andrea also requested reimbursement to the community estate from David, as well as reimbursement to her separate property estate for separate funds or assets expended for the benefit of the community estate. David filed his Original Counterpetition for Divorce on August 20, and his First Amended Counterpetition for Divorce on April 18, 2022, both citing the ground of insupportability. David's Amended Counterpetition included Shawna, Inc. as a third-party defendant, and requested the following: 1) reimbursement to the community estate for funds or assets expended for the benefit of Andrea's separate property; 2) reimbursement to the community estate for the value of community time, toil, talent, and effort expended by the parties

for the benefit of Andrea's separate property; 3) an order for the partition and sale of the marital residence, as he alleged each party separately owned an undivided one-half interest therein; and 4) that the trial court disregard the corporate form of Shawna, Inc. on the theory of alter ego. Both Andrea and David requested an unequal division of the community estate in their respective pleadings. This matter proceeded to a bench trial.

At trial, Andrea testified that before the marriage, she owned a house in Terrell, Texas, which she later sold for $354,000.00. She inherited several pieces of real property, a number of antique cars and firearms, $845,851.88 in cash, and an investment account containing $50,000.00 from her late father, Richard Don Harris, following his death on August 8, 2015. During his lifetime, Harris also owned Shawna, Inc., a Texas corporation formed in 1992 for the purpose of owning, selling, and carrying the notes on real estate properties. Andrea became 100% owner of Shawna, Inc.'s stock before both her marriage to David and Harris's death. Shawna, Inc. later purchased a 33.3-acre tract of land in Lindale, Texas, and built a "shop" thereon for the storage of tools and equipment. On December 31, 2019, Shawna, Inc. deeded one-half acre of the tract to both David and Andrea. The parties built a home on this piece of land. Andrea paid for the house with her separate property funds. Andrea also used her separate funds to pay for the parties' living expenses and other purchases during the marriage, because neither she nor David worked a paying job, although both of them regularly worked on various pieces of real property. At the time of the parties' divorce, Andrea stated that all the money she inherited from her father was spent. Andrea also introduced expert testimony, including a licensed real estate appraiser and two forensic accountants as tracing experts.

David testified that he was released from federal prison approximately six months before he and Andrea married, where he had been serving a sentence for illegally modifying a machine gun. He owned multiple cemetery plots, assorted tools, and some mechanical equipment on the date of the marriage but had no separate property funds. David agreed that neither he nor Andrea worked a paying job during the marriage, but lived out of the corporation, although he never saw any receipts showing how exactly the parties' bills were paid. He spent a substantial amount of time working to improve the tract of land in Lindale, as well as other real properties located in Terrell, Texas and Forney, Texas. He believed that the half-acre of land deeded to himself and Andrea by Shawna, Inc. was intended as a gift because Andrea told him that she was giving the house to David and herself.

Thereafter, the trial court granted the divorce, classified the house and half-acre of land as community property, and awarded Andrea a reimbursement for the improvements thereto. The court classed a number of vehicles, firearms, furniture, antiques, and other household items as Andrea's separate property. The court awarded David a reimbursement for his time, toil, and effort in working on the property, as well as ownership of the parties' community property camper (with a reimbursement to Andrea) and confirmed that several vehicles were his separate property because they were gifts. Other assets, including investment accounts and bars of silver and gold, were divided equally between the parties.

The trial court issued original and amended findings of fact and conclusions of law at David's request, and this appeal followed.

**CORPORATION AS ALTER EGO**

In his first issue, David contends that the trial court erroneously found that Shawna, Inc., a corporation owned by Andrea, was not Andrea's alter ego.

**Standard of Review**

A party seeking to disregard corporate formalities bears the burden of proving that the company is an alter ego of another person or entity. *Fuentes v. Zaragoza*, 555 S.W.3d 141, 169 (Tex. App.—Houston [1st Dist.] 2018, no pet.). We review de novo conclusions of law regarding alter ego to determine their correctness as applied to the facts. *See BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). We review the trial court's findings of fact under the same standards for sufficiency that govern the review of jury findings, giving deference to the trial court's determination of the weight and credibility of the evidence. *Reisler v. Reisler*, 439 S.W.3d 615, 620 (Tex. App.—Dallas 2014, no pet.).

In evaluating a legal sufficiency or "no-evidence" challenge, we credit evidence that supports the finding if a reasonable fact finder could consider it, and disregard contrary evidence unless a reasonable fact finder could not disregard it. *See City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). We sustain a legal insufficiency point when the record demonstrates (1) a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla;[1] or (4) that the evidence conclusively

---

[1] More than a scintilla of evidence exists when the evidence supporting the finding, as a whole, rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *Merrell Dow Pharm., Inc.*

establishes the opposite of the vital fact. *Id.* at 810. In an appeal from a bench trial, we review the trial court's conclusions of law de novo and will uphold them on appeal if the judgment of divorce can be sustained on any legal theory supported by the evidence. *Reisler*, 439 S.W.3d at 619. If an appellate court finds reversible error in any part of the trial court's property division that materially affects the just and right division of the community estate, it must remand for a new division of the entire community estate. *Id.* at 620.

## Applicable Law

Under certain exceptional circumstances in a divorce case, a spouse may be able to reach the assets of the other spouse's separately owned corporation. *Young v. Young*, 168 S.W.3d 276, 281 (Tex. App.—Dallas 2005, no pet.). A finding of alter ego allows piercing of the corporate veil. *Id.* Piercing the corporate veil allows the trial court to characterize as community property assets that would otherwise be the separate property of a spouse. *Id.* In a divorce case, a finding of alter ego requires (1) unity between the separate property corporation and the spouse such that the separateness has ceased to exist, and (2) the spouse's improper use of the corporation damaged the community estate beyond that which might be remedied by a claim for reimbursement. *Id.* at 281–82. The trial court must find something more than mere dominance of the corporation by the spouse. *Lifshutz v. Lifshutz*, 61 S.W.3d 511, 517 (Tex. App.—San Antonio 2001, pet. denied).

## Analysis

There is some evidence of unity between Shawna, Inc. and Andrea. Andrea owns 100% of the corporation's shares and was solely in charge of the corporation's day-to-day finances. Although Jack Hawthorne, the accountant for Shawna, Inc., testified that the corporation owed a note to the shareholder, dating back to when Harris owned the company, he also testified that Andrea sometimes paid non-corporate expenses using corporate funds. He explained that those payments were not always accounted for as repayments of that note. But, Andrea produced evidence that this is typical in small businesses, and not an accounting problem if what is personal is later reconciled against the loan.

Importantly, David has not shown that improper use of the corporation by Andrea damaged the community estate beyond what could be remedied by a claim for reimbursement.

---

*v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997). Less than a scintilla of evidence exists when the evidence is so weak as to do no more than create a mere surmise or suspicion of a fact. *Driskill v. Ford Motor Co.*, 269 S.W.3d 199, 203 (Tex. App.—Texarkana 2008, no pet.) (citing *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003)).

The record does not show that Andrea's alleged misuse of the corporation "harmed the community estate by converting community assets to separate corporate property." *Id.* at 518. For example, there is no evidence that Andrea deposited a salary from the corporation, which would rightfully be community property, back into the corporate account, nor that she made unaccounted-for personal expenditures with company funds. *Young*, 168 S.W.3d 276 at 283. David appears to argue that the damage to the community estate arises primarily out of a substantial reimbursement claim for repayment of the parties' living expenses during the marriage. But the community estate was not harmed by Andrea's actions. The community estate was harmed by high living expenses combined with no income other than interest income. *See id.* (finding harm to community where community funds were commingled with corporation and substantial amounts were unaccounted for at time of divorce). David also alleges that the community estate was damaged by Shawna, Inc.'s deed of land to the parties, because the community was then obligated to pay property taxes. But the transfer of the half-acre added to and enhanced the community, rather than causing harm, at the expense of the corporation. *Lifshutz*, 61 S.W.3d at 518.

We conclude that the evidence was sufficient for the trial court to find that Shawna, Inc. is not Andrea's alter ego, and that the assets thereof are not community property. Accordingly, we overrule David's first issue.

## CLASSIFICATION OF MARITAL PROPERTY

David alleges in issue two that the trial court erred in its characterization of certain property as community or separate property.

### Standard of Review

We review the trial court's characterization of marital property for abuse of discretion. *See In re Marriage of Skarda*, 345 S.W.3d 665, 671 (Tex. App.—Amarillo 2011, no pet.). A trial court abuses its discretion when its decision is arbitrary, unreasonable, and without reference to guiding principles. *In re A.L.M.-F.*, 593 S.W.3d 271, 282 (Tex. 2019). Property possessed by either spouse during or upon dissolution of the marriage is presumed to be community property, and a spouse wishing to overcome the community property presumption must prove the separate character of the property by clear and convincing evidence. *Viera v. Viera*, 331 S.W.3d 195, 206 (Tex. App.—El Paso 2011, no pet.). Clear and convincing evidence means the measure or degree of proof that will produce in the mind of the trier of fact a firm

5

belief or conviction as to the truth of the allegations sought to be established. *See* TEX. FAM. CODE ANN. § 101.007 (West 2021); *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002). In family law cases, the abuse of discretion standard of review overlaps with the traditional sufficiency standards of review; as a result, legal and factual sufficiency are not independent grounds of reversible error, but instead constitute factors relevant to our assessment of whether the trial court abused its discretion. *In re Marriage of McCoy*, 488 S.W.3d 430, 433 (Tex. App.—Houston [14th Dist.] 2016, no pet.).

In conducting a legal sufficiency review under the clear and convincing evidence standard, an appellate court reviews all of the evidence in the light most favorable to the trial court's finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). Looking at the evidence in the light most favorable to the judgment means that a reviewing court must assume that the fact finder resolved disputed facts in favor of the finding if a reasonable fact finder could do so. *See id*. When considering factual sufficiency of the evidence under the clear and convincing evidence standard, we give due consideration to evidence the fact finder reasonably could have found to be clear and convincing. *See Magness v. Magness*, 241 S.W.3d 910, 912 (Tex. App.—Dallas 2007, pet. denied). We then consider whether disputed evidence is such that a reasonable fact finder could not have resolved that disputed evidence in favor of its finding. *In re J.F.C.*, 96 S.W.3d at 266.

## Applicable Law

To overcome the community property presumption, the spouse claiming certain property as separate property must trace and clearly identify the property claimed to be separate. *Boyd v. Boyd*, 131 S.W.3d 605, 612 (Tex. App.—Fort Worth 2004, no pet.). Tracing involves establishing the separate origin of the property through evidence showing the time and means by which the spouse originally obtained possession of the property. *Smith v. Smith*, 22 S.W.3d 140, 144 (Tex. App.—Houston [14th Dist.] 2000, no pet.) (op. on reh'g). A party's own testimony may be sufficient to rebut the community property presumption and establish items as separate property if it is uncontroverted. *Monroe v. Monroe*, 358 S.W.3d 711, 718 (Tex. App.—San Antonio 2011, pet. denied); *Sanchez v. Wales*, No. 05-20-00485-CV, 2022 WL 1055376, at *4 (Tex. App.—Dallas Apr. 8, 2022, no pet.) (mem. op.) (husband's testimony uncontroverted that funds used to purchase property were separate assets, and record contained no evidence funds

were derived from any other source). However, courts should resolve any doubt as to the character of property in favor of the community estate. *Granger v. Granger*, 236 S.W.3d 852, 856-57 (Tex. App.—Tyler 2007, pet. denied).

## Marital Residence

David claims that the trial court erred in classifying the half-acre of land appended to the marital residence (and consequently, the marital home itself) as community property. Because the deed is from Shawna, Inc., a third-party corporation, and transfers the land to both David and Andrea, the residence is presumed to be community property. *See Dutton v. Dutton*, 18 S.W.3d 849, 852 (Tex. App.—Eastland 2000, writ denied). Therefore, David bore the burden to show the separate character of the property by clear and convincing evidence. The record contains no documentary evidence tracing the property to support David's contention as to its separate nature. And his testimony that Andrea caused Shawna, Inc. to transfer the property as a joint gift is contradicted by Andrea's testimony that Shawna, Inc. deeded the land to both spouses only because it would allow them to get a homestead exemption for the property, but that it was not intended as a gift from the corporation to the parties. Additionally, Tony Morgan, a forensic accounting expert, testified that to his knowledge from over four decades of accounting practice, corporations are not permitted to make gifts, because this would circumvent taxation on dividends.

Generally, a joint gift to a husband and wife is not community property; rather, each gets a one-half undivided separate interest in the gift. *Id.* However, a deed from a third party in the names of both husband and wife raises a presumption that the property is community rather than jointly held separate property, and no presumption of gift to either spouse arises in such a situation. *Id.*; *see also Adkison v. Adkison*, No. 12-06-00077-CV, 2007 WL 259550, at *4 (Tex. App.—Tyler Jan. 31, 2007, no pet.) (mem. op.). Therefore, because the deed was from Shawna, Inc. to David and Andrea, rather than from Andrea in the name of both spouses, the property is presumed to be community, and it was David's burden to provide "satisfactory proof to the contrary." *In re Marriage of Moncey*, 404 S.W.3d 701, 712 (Tex. App.—Texarkana 2013, no pet.).

David's controverted testimony, unsupported by documentary evidence, is insufficient to rebut the community property presumption and prove by clear and convincing evidence that the half-acre is composed of two separate-property undivided one-half interests. *See Graves v.*

*Tomlinson*, 329 S.W.3d 128, 139 (Tex. App.—Houston [14th Dist.] 2010, pet. denied). And, although the parties appear to dispute the source of the funds used to construct the residence, improvements to real property have the same character as the underlying real property, regardless of whether a spouse's separate estate or the community estate installed the fixtures or made the improvements. *See Dakan v. Dakan*, 83 S.W.2d 620, 628 (Tex. 1935); *In re Marriage of Morris*, 12 S.W.3d 877, 881–82 (Tex. App.—Texarkana 2000, no pet.); *Foxworth-Galbraith Lumber Co. v. Thorp*, 86 S.W.2d 644, 645–46 (Tex. App.—Amarillo 1935, no writ). Presuming that the trial court resolved any doubt as to characterization in favor of the community, we conclude that a reasonable trier of fact could have resolved the disputed evidence in favor of its finding and formed a firm belief that the half acre of land and the residence thereon were community property. *See In re J.F.C.*, 96 S.W.3d at 266.

## Separate Property Bank Accounts

David argues that the trial court incorrectly characterized funds in bank accounts belonging to Andrea and Shawna, Inc., respectively, as separate property, because interest, which was community income, was paid into those accounts during the marriage.

When separate and community funds are commingled in a manner defying segregation and identification, it is presumed that the entire fund consists of community property. *Matter of Marriage of Stegall*, 519 S.W.3d 668, 674 (Tex. App.—Amarillo 2017, no pet.). However, when the separate funds in an account can be traced and the trial court can accurately determine each party's interest, a showing that community and separate funds were deposited in the same account does not divest the separate funds of their identity. *See Zagorski v. Zagorski*, 116 S.W.3d 309, 319-20 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). "[W]hen separate and community property are commingled in a single bank account, we presume the community funds are drawn out first, before separate funds are withdrawn." *Id.* The only requirement for tracing and the application of the community-out-first presumption is that the party attempting to establish the account as separate property must produce "clear evidence" of the transactions affecting the commingled account. *Id.*

Andrea testified as to the amounts in the disputed bank accounts before the parties' marriage and upon her inheritance from her father, respectively. Further, Shane Rohrbach, a CPA who prepared a tracing and reimbursement report analyzing Andrea's claimed separate property, testified at trial that he reviewed documentation related to several accounts, including

operating accounts for Shawna, Inc., accounts at Texas Bank & Trust and Edward Jones that Andrea inherited from her father, and a checking account in Andrea's name. He found $131,257.33 of community income for the accounts during the marriage (including all interest income, tax-exempt interest, dividends, and self-employed income and retirement distributions), no W-2 income for either spouse during the same period, and over $1 million in expenditures. He further found that the inherited accounts had been almost completely depleted by the time of the parties' separation. Rohrbach examined numerous bank statements, canceled checks, receipts, and tax returns (including returns for Richard Don Harris, Shawna, Inc., and Andrea and David). He found other documentation showing the transactions that occurred in the disputed accounts and showing the liquidation of personal property owned by Andrea before the marriage. Andrea submitted all these documents as exhibits, along with Rohrbach's tracing report.

Although Rohrbach's report used the "clearinghouse method" to determine what assets had been purchased with Andrea's separate property, the sum of the testimonial and documentary evidence before the trial court was sufficiently clear to permit application of the "community-out-first" presumption for the accounts.[2] *See id.* at 320. We conclude that the evidence could have permitted the trial court to form a firm conviction that the community funds in the accounts were drawn out first, and any remaining funds in the accounts were separate property. *See In re J.F.C.*, 96 S.W.3d at 266.

### Expenditures by Shawna, Inc.

David further alleges that the trial court should have characterized "[e]verything Shawna, Inc. paid for during the marriage," as community property, ostensibly because he believes the trial court should have considered those purchases as distributions paid by Shawna, Inc. to Andrea.

Rule 38.1(i) of the Texas Rules of Appellate Procedure requires that an appellant's brief "contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX. R. APP. P. 38.1(i). The appellate court has no duty to brief issues for an appellant. *Huey v. Huey*, 200 S.W.3d 851, 854 (Tex. App.—Dallas 2006, no pet.).

---

[2] Texas law recognizes multiple methods for tracing separate property funds in commingled accounts, and the separate character of purchases made with those funds. The "clearinghouse method" presumes that when a spouse deposits separate property money into a commingled account, and makes a subsequent purchase of a similar amount from that same account, the purchased asset may be traced as separate property. *See, e.g., Peterson v. Peterson*, 595 S.W.2d 889 (Tex. Civ. App. Austin 1980, writ dism'd). Because almost all of Andrea's separate property funds were expended during the parties' marriage and the parties disputed the separate character of assets purchased therewith, Rohrbach's use of this method was reasonable to determine those assets' character.

The failure to provide appropriate record citations or a substantive analysis waives an appellate issue. *WorldPeace v. Comm'n for Lawyer Discipline*, 183 S.W.3d 451, 460 (Tex. App.— Houston [14th Dist.] 2005, pet. denied); *see also Fredonia State Bank v. Gen. Am. Life Ins. Co.*, 881 S.W.2d 279, 284-85 (Tex. 1994) (appellate court has discretion to deem issues waived due to inadequate briefing). References to sweeping statements of general law are rarely appropriate. *Bolling v. Farmers Branch Ind. Sch. Dist.*, 315 S.W.3d 893, 896 (Tex. App.— Dallas 2010, no pet.). Even though we must construe briefing requirements reasonably and liberally, a party asserting error on appeal still must put forth some specific argument and analysis showing that the record and the law support its contentions. *San Saba Energy, L.P. v. Crawford*, 171 S.W.3d 323, 338 (Tex. App.—Houston [14th Dist.] 2005, no pet.). An appellate court has no duty—nor any right—to perform an independent review of the record and applicable law to determine whether there was error. *Canton–Carter v. Baylor Coll. of Med.*, 271 S.W.3d 928, 931–32 (Tex. App.—Houston [14th Dist.] 2008, no pet.); *Valadez v. Avitia*, 238 S.W.3d 843, 845 (Tex. App.—El Paso 2007, no pet.). Were we to do so, we would be abandoning our role as neutral adjudicators and become an advocate for that party. *Valadez*, 238 S.W.3d at 845.

In his brief, David does not specify any items he alleges comprise "[e]verything Shawna, Inc. paid for," nor does he present any precise facts about the alleged distributions. David generally cites case law about the community nature of partnership distributions and the burden of proof for separate property status but performs no fact-specific substantive analysis to show how these cases support his allegations. *See Sweed v. City of El Paso*, 195 S.W.3d 784, 786 (Tex. App.—El Paso 2006, no pet.) ("merely uttering brief conclusory statements" is not a discussion of the facts and authorities relied upon contemplated by Rule 38). The provided record citations appear to imply that David contends either the half-acre of land Shawna, Inc. deeded to the parties or any amounts paid by Shawna, Inc. toward the improvements on the half-acre should have been classed as community property. But this is an irrational assertion considering his argument that the trial court *wrongly* characterized the land and improvements as community property.

Appellant essentially presents nothing for our review regarding the distributions he alleges Shawna, Inc. made during the parties' marriage, that the trial court subsequently mischaracterized. Accordingly, Appellant has waived his complaint regarding this portion of his

second point of error. *See* TEX. R. APP. P. 38.1(i); *WorldPeace*, 183 S.W.3d at 460; *see also Fredonia State Bank*, 881 S.W.2d at 284-85.

## Specific Items of Separate Property

David contends that the trial court wrongly characterized specific items as Andrea's separate property, because she failed to prove their separate property character by clear and convincing evidence. Specifically, he points to the items listed in an exhibit to the trial court's Amended Findings of Fact and Conclusions of Law with the basis for the separate property finding listed as "unknown." All these items are contained under the heading "Personal Property and Household Furnishings," and all are items that Andrea testified she either owned before the marriage or inherited from her father. Gavin White, Andrea's son, additionally testified that he recalled each of the disputed items being either in his mother's possession prior to her marriage to David, or in his grandfather's possession prior to his death. C.J. White, Andrea's other son, gave similar testimony that each disputed item was owned either by his grandfather prior to his death, or by Andrea before she married David. David fails to specify in his brief which items under this heading he contends Andrea did not prove as her separate property, nor did he do so at trial. Nor did he suggest, through his testimony or documentary evidence, that Andrea acquired the items from any alternative source. Thus, Andrea's testimony about the origin of these items is both uncontroverted and corroborated, and sufficient to meet the standard of clear and convincing evidence. *See Monroe*, 358 S.W.3d at 718.

It is the province of the finder of fact to determine witnesses' credibility and assign weight to their respective testimony. *See City of Keller*, 168 S.W.3d at 819. Based on the evidence available to the trial court, we conclude that a reasonable trier of fact could have resolved the disputed evidence in favor of its finding and formed a firm belief that the items were Andrea's separate property. *In re J.F.C.*, 96 S.W.3d at 266.

## Summation

Having determined that the trial court did not abuse its discretion regarding the characterization of certain property as community or separate property, we overrule David's second issue.

11

In his third issue, David contends that the trial court erred in awarding certain reimbursements to Andrea's separate estate from the community estate and failing to award certain reimbursements from Andrea's separate estate to the community estate.

## Standard of Review

We review a trial court's award of reimbursement under an abuse of discretion standard. *Matter of Estate of Baker*, 627 S.W.3d 523, 526–27 (Tex. App.—Waco 2021, no pet.). If there is some evidence of substantive and probative character to support the trial court's decision, there is no abuse of discretion. *Ayala v. Ayala*, 387 S.W.3d 721, 726 (Tex. App.—Houston [1st Dist.] 2011, no pet.). Great latitude must be given to the trial court in applying equitable principles to value a claim for reimbursement. *Penick v. Penick*, 783 S.W.2d 194, 198 (Tex. 1988). An equitable claim for reimbursement is not merely a balancing of the ledgers between the marital estates. *Id.* The discretion to be exercised in evaluating a claim for reimbursement is equally as broad as that discretion subsequently exercised by the trial court in making a "just and right" division of the community property. *Id.*

## Applicable Law

Claims for reimbursement are generally governed by Section 3.402 of the Texas Family Code. *See* TEX. FAM. CODE ANN. § 3.402 (West 2021). "The rule of reimbursement is purely an equitable one." *Vallone v. Vallone*, 644 S.W.2d 455, 458 (Tex. 1982); *see also* TEX. FAM. CODE ANN. § 3.402(b) (court shall resolve claims for reimbursement by using equitable principles). A right of reimbursement arises when funds of one estate are used to benefit another estate without itself receiving some benefit. *Vallone*, 644 S.W.2d at 459. "The right of reimbursement is not an interest in property or an enforceable debt, per se, but an equitable right which arises upon dissolution of the marriage through death, divorce or annulment." *Id.* at 458-59. The party claiming the right of reimbursement has the burden of pleading and proving that the expenditures and improvements were made and that they are reimbursable. *Id.* at 459. Specifically, to prove a claim for reimbursement, the spouse seeking reimbursement must establish the following: (1) a contribution was made by one marital estate to another, (2) the contribution was reimbursable, and (3) the value of the contribution. *Id.*; *Richardson v. Richardson*, 424 S.W.3d 691, 700 (Tex. App.—El Paso 2014, no pet.). Reimbursements may run from community estate to separate

estate, from separate estate to community estate, and from separate estate to separate estate. ***Alsenz v. Alsenz***, 101 S.W.3d 648, 655 (Tex. App.—Houston [1st Dist.] 2003, pet. denied).

Because of a reimbursement claim's equitable nature, the trial court considers all facts pertaining to the transaction in making its determination, and we reverse a trial court's decision only when it abuses its discretion. ***Penick***, 783 S.W.2d at 197. The Texas Legislature codified many reimbursement claims, but Section 3.402 should not be read as the exclusive list of reimbursable claims. *See **Nelson v. Nelson***, 193 S.W.3d 624, 632 (Tex. App.—Eastland 2006, no pet.); *see also* TEX. GOV'T CODE ANN. § 311.005(13) (West 2021). A claim for reimbursement recognized at common law is generally still viable as long as it is not specifically classified as non-reimbursable under the current statutory scheme. *See* TEX. FAM. CODE ANN. § 3.409 (West 2021) (listing non-reimbursable claims). This interpretation is reinforced by the equitable nature of reimbursement claims and the mandate that the trial court balance all the facts, circumstances, and equities of the particular matter before it. *See **id.*** § 3.402(b); ***Penick***, 783 S.W.2d at 197.

## Analysis

David contends that the trial court erroneously adjudged the award of reimbursements as follows: 1) the trial court awarded Andrea an excessive reimbursement to her separate property for a 2018 Cruiser Aire camper, because the reimbursement did not account for the remaining debt owed on the camper; 2) the trial court erroneously awarded Andrea's separate estate a reimbursement for the construction and improvement costs to the parties' former marital residence and the adjoining land; and 3) the trial court failed to award a reimbursement to the community estate for the time, toil, and effort Andrea directed toward her separate property.

### *2018 Cruiser Aire Camper*

The trial court characterized the parties' 2018 Cruiser Aire camper as community property and awarded it to David, with a reimbursement to Andrea of $11,800.00. David argues, without citing any relevant law, that the trial court should have considered only the $6,000.00 equity amount in determining any reimbursement. However, the trial court had broad discretion in applying equitable principles to determine an appropriate amount of reimbursement, and in claims not for capital improvements, reimbursements may be measured by the cost to the contributing estate. ***Penick***, 783 S.W.2d at 197-98; ***Barras v. Barras***, 396 S.W.3d 154, 176-77 (Tex. App.—Houston [14th Dist.] 2013, pet. denied). Here, Andrea testified that she paid $4,000.00 as an initial down payment for the camper from her separate funds and made all of the

$304.01 monthly payments on the note, as well as all insurance payments, from August 2020 and throughout the period of the parties' separation.[3] The documentary evidence supports both the amount of the down payment and the monthly payment (although there is no evidence of the amount of any insurance payments), and the trial court indicated that it considered some of the equity in the camper in evaluating the reimbursement claim.

Moreover, David testified that he never made any payments toward the camper's note or insurance and does not dispute on appeal that Andrea made those payments from her separate property. And, to the extent that Andrea's separate estate may have received some benefit from the acquisition of the camper, David did not present any evidence regarding an offset for any such benefit. *See* TEX. FAM. CODE ANN. § 3.402(e) (party seeking an offset to a claim for reimbursement has burden of proof on the offset). Viewing the evidence in the light most favorable to the trial court's ruling, we cannot say that the trial court's award was arbitrary, unreasonable, or made without reference to guiding principles. *See Ayala*, 387 S.W.3d at 726; ***In re A.L.M.-F.***, 593 S.W.3d at 282. The record contains at least some evidence of substantive and probative character to support the trial court's reimbursement award for the camper. *Ayala*, 387 S.W.3d at 726.

### *Improvements to Marital Residence*

We have already concluded that the trial court correctly characterized the half-acre of land and house comprising the marital residence as community property. Because the improvements to the half-acre of land (including construction costs of the house) were paid with Andrea's separate funds, her separate estate was entitled to reimbursement. *See* TEX. FAM. CODE ANN. § 3.402(a)(8) (authorizing equitable reimbursement claim when one marital estate makes capital improvements to property of another marital estate other than by incurring debt). However, David argues that the trial court erroneously determined the reimbursement amount based on the cost of the improvements. The Texas Supreme Court has determined that "a claim for reimbursement for funds expended by an estate for improvements to another estate is to be measured by the enhancement in value to the benefited estate," and not by the actual costs expended. ***Anderson v. Gilliland***, 684 S.W.2d 673, 675 (Tex. 1985); *see also **In re Marriage of McCoy***, 488 S.W.3d at 435 (enhanced value determined by difference between fair market value

---

[3] The final hearing of this matter commenced in June 2022 and the Final Decree of Divorce was entered on August 25, 2022. Andrea therefore could have made as few as 22 or as many as 24 payments on the camper during the marriage.

before and after improvements). Evidence of the property's value without the improvements and the value with improvements is sufficient to sustain a finding as to the amount of the enhancement value. *Id.*, *see also* **Magill v. Magill**, 816 S.W.2d 530, 535 (Tex. App.—Houston [1st Dist.] 1991), *writ denied* (Nov. 18, 1992) ("Testimony regarding the value of the property before the improvements and the value after the improvements is sufficient to sustain a finding of enhanced value").

In distributing the marital estate, the trial court awarded Andrea a reimbursement to her separate estate in the amount of $228,500.00 for the improvements to the half-acre and house. Kyle Engel, a licensed real estate appraiser, testified that as of November 3, 2021, he valued the half-acre with improvements at $344,000.00, based on the "market comparison approach" and the "cost approach." However, Engel conceded that his estimate assumed the property would come with an easement to access the nearest public road, as the half-acre was entirely surrounded by land owned by Shawna, Inc., and that lack of such an easement could impact the property's value. Rohrbach testified that documents he reviewed showed that Shawna, Inc. paid $216,000.00 for the entire 33.3-acre tract of land in 2016, and that the total cost of the improvements was $288,070.00. And Andrea testified that she believed the value of the half-acre without the improvements was approximately $3,000.00, because it was an undesirable "sand pit"—an amount only slightly lower than the per-acre price Shawna, Inc. paid for the land. The difference between the alleged fair market value of the property before and after the improvements based upon the trial testimony would be $341,000.00. The trial court's reimbursement award of $228,500.00 was therefore significantly *lower* than both the enhancement value Andrea sought to establish and the cost of the improvements to the original half-acre and comports with the trial court's finding that the correct value of the property with the improvements was in fact $232,000.00. We cannot conclude from this evidence that the trial court improperly based its award of this reimbursement on the cost of the improvements. Viewing the evidence in the light most favorable to the trial court's ruling, the record contains some evidence of substantive and probative character to support the trial court's determination of the reimbursement amount. *See Ayala*, 387 S.W.3d at 726.

### Time, Toil, Talent, and Effort

During marriage, a spouse's time, toil, talent, and effort (TTT&E) belongs to the community estate. *See Vallone*, 644 S.W.2d at 458. Under the statutory reimbursement scheme

in the Texas Family Code, a claim for reimbursement arises when the community estate receives inadequate compensation for a spouse's TTT&E from a business under that spouse's control and direction. TEX. FAM. CODE ANN. § 3.402(a)(2). And under Texas common law, inadequate compensation received by the community estate for a spouse's TTT&E to enhance either spouse's separate property is reimbursable to the extent that the TTT&E exceeds what is reasonably necessary to preserve and maintain the separate property. *Jensen v. Jensen*, 665 S.W.2d 107, 110 (Tex. 1984).

David's appellate brief states in conclusory fashion that "As a matter of equity, given the outcome of the property division in this case as well as the Trial Court's liberal granting of Appellee's many reimbursement claims, the Trial Court abused its discretion in not granting this reimbursement claim as well." His argument continues that "[t]here was sufficient evidence to grant a reimbursement to the community for Appellee's own time, toil, and effort contributed to her separate estate." But the proponent of *each* reimbursement claim has the burden to plead and prove the requisite factors for that claim, regardless of the trial court's decisions on other reimbursement claims. *See Vallone*, 644 S.W.2d at 458. David provides no analysis in relation to this reimbursement claim, but only supplies several record citations unrelated to any efforts by Andrea concerning her separate property. He does not allege the extent of Andrea's TTT&E directed toward her separate property (including Shawna, Inc.) during the marriage, nor does he state what compensation the community estate received or why that compensation was inadequate. *See* TEX. FAM. CODE ANN. § 3.402(a)(2). Similarly, he does not allege that Andrea's TTT&E aimed at her separate property exceeded what was reasonably necessary for preservation and maintenance of same. *Jensen*, 665 S.W.2d at 110. David failed to plead what expenditure(s) of TTT&E Andrea made during the marriage, show that such expenditure(s) are reimbursable, or establish the value of any such expenditures. *See Vallone*, 644 S.W.2d at 458. Consequently, we conclude that the trial court did not abuse its discretion in failing to grant David's claim for reimbursement for Andrea's time, toil, talent, and effort.

**Summation**

Because the trial court did not abuse its discretion with respect to reimbursements, we overrule David's third issue.

Finally, in his fourth issue, David contends that the trial court abused its discretion by awarding a substantially greater portion of the community property estate to Andrea.

## Standard of Review

We review a trial court's division of property under an abuse of discretion standard. *Granger*, 236 S.W.3d at 855. A trial court does not abuse its discretion if there is some evidence of a substantive and probative character to support the decision. *Id.* at 855–56. In family law cases, legal and factual sufficiency are factors relevant to our assessment of whether the trial court abused its discretion. *Id.* at 856. Thus, we apply a two-prong test: (1) whether the trial court had sufficient evidence upon which to exercise its discretion, and (2) whether the trial court erred in its application of that discretion. *Id.* We then consider whether, based on the evidence, the trial court made a reasonable decision. *Id.* We may not substitute our own judgment for that of the trial court. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985), *cert. denied*, 476 U.S. 1159, 106 S. Ct. 2279, 90 L.Ed.2d 721 (1986).

## Applicable Law

A court, upon the dissolution of marriage, is authorized to divide the estate of the parties. TEX. FAM. CODE ANN. § 7.001 (West 2021). The trial court has wide discretion in dividing the estate of the parties; we presume that the trial court properly exercised its discretion and may not disturb the trial court's property division unless the trial court clearly abused its discretion. *Murff v. Murff*, 615 S.W.2d 696, 698 (Tex. 1981). The trial court is charged with dividing the estate of the parties in a "just and right" manner, considering the rights of both parties. TEX. FAM. CODE ANN. § 7.001. The community property of the marital estate need not be equally divided. *Murff*, 615 S.W.2d at 699. The trial court may order an unequal division of the community property when a reasonable basis exists for granting that relief. *Hailey v. Hailey*, 176 S.W.3d 374, 380 (Tex. App.—Houston [1st Dist.] 2004, no pet.). The trial court may consider such factors as the spouses' capacities and abilities, business opportunities, education, relative physical conditions, relative financial condition and obligations, disparity of ages, size of separate estates, and the nature of the property, but this list is not mandatory or exclusive. *Murff*, 615 S.W.2d at 699.

**Analysis**

David states that the trial court awarded him only 2.9% of the community estate's value, while Andrea received 97.1%. This disparity, David claims, is because the trial court mischaracterized the half-acre and marital home as community property, and subsequently improperly granted reimbursements to Andrea for "virtually every" asset the trial court classified as community property. Essentially, David urges that his other points of error render the trial court's division of the community property an abuse of discretion.

In distributing the marital estate upon dissolution of a marriage, the trial court should examine each case on its own facts to determine whether an unequal distribution is justified. *In re Marriage of Rice*, 96 S.W.3d 642, 650 (Tex. App.—Texarkana 2003, no pet.). In this case, Andrea entered the marriage with a significant amount of separate property, which increased greatly upon her inheritance from her father. Conversely, David had no separate property funds at the time the parties married in 2015, but had only separate ownership of assorted tools and mechanical equipment. During the parties' marriage, neither party engaged in any W-2 paid employment, and almost all the parties' purchases and expenses were paid using Andrea's separate property. Consequently, the community estate remained comparatively small (with evidence showing a five-year income of $131,257.33). We have already concluded that the trial court did not err in its findings regarding the characterization of the marital estate and the reimbursements to which Andrea's separate property estate was entitled.

Accordingly, we conclude that the unique facts of this case provided a reasonable basis for the trial court to order a sizeable reimbursement to Andrea. After accounting for the reimbursement, the trial court divided the community estate in David's favor and did not abuse its discretion in its division. We overrule David's fourth issue.

## CONCLUSION

Having overruled each of David's issues, we ***affirm*** the trial court's judgment.

**BRIAN HOYLE**
Justice

Opinion delivered May 10, 2023.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

18



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**MAY 10, 2023**

**NO. 12-22-00286-CV**

**IN THE MATTER OF THE MARRIAGE OF ANDREA SHAWN HARRIS MOORE AND DAVID ALAN MOORE**

**DAVID ALAN MOORE,**
Appellant
V.
**ANDREA SHAWN HARRIS MOORE,**
Appellee

Appeal from the County Court at Law No 2

of Smith County, Texas (Tr.Ct.No. 21-0325-F)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, all costs of this appeal are assessed against the Appellant, DAVID ALAN MOORE, and that this decision be certified to the court below for observance.

Brian Hoyle, Justice
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*